# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS

Nathan Nissenbaum )
PETITIONER )
)
Y 36333 )          Case Number: _____
(Prisoner Number) )                    (Supplied by Clerk of this Court)
      vs. )
)
Melinda Eddy, Warden )
Taylorville Correctional Center )
RESPONDENT )
)
**(Fill in the following blank <u>only</u> if** )
**judgment attacked imposes a sentence** )
**to commence in the future.)** )
)
ATTORNEY GENERAL OF THE )
STATE OF )          Case Number of State Court Conviction:
_____ )
(State where judgment entered) )
)          2015 CR 03972 _____
)

## PETITION FOR WRIT OF HABEAS CORPUS – PERSON IN STATE CUSTODY

1. Name and location of court where conviction entered: Circuit Court of Cook County Illinois at George N. Leighton Criminal Court Building, 2600 South California Avenue, Chicago, Illinois 60608.

2. Date of judgment of conviction: September 15, 2017

3. Offense(s) of which petitioner was convicted (list all counts with indictment numbers, if known): aggravated criminal sexual assault, home invasion, aggravated kidnapping, and aggravated domestic battery. All of these convictions were entered under Case No. 2015 CR 03972.

4. Sentence(s) imposed: 8 years for aggravated criminal sexual assault, 6 years for home invasion to be served consecutively to the aggravated criminal sexual assault, 6 years concurrent sentence for aggravated kidnapping, and 5 years concurrent sentence for aggravated domestic battery.

1

Rev. 06/29/2016

5. What was your plea? (Check one)  ☒ Not guilty  ☐ Guilty  ☐ Nolo contendere
If you pleaded guilty to one count or indictment and not guilty to another count or indictment, give details: N/A

## PART I – TRIAL AND DIRECT REVIEW

1. Kind of trial: (Check one):  ☐ Jury  ☒ Judge only

2. Did you testify at trial?  ☒ Yes  ☐ No

3. Did you appeal from the conviction or the sentence imposed?  ☒ Yes  ☐ No

    (A)  If you appealed, give the

        (1) Name of court: Illinois Appellate Court

        (2) Result: Affirmed

        (3) Date of ruling: Affirmed on March 19, 2021; petition for rehearing was denied on April 13, 2021

        (4) Issue raised: The sole issue on appeal was that Nissenbaum was denied his Sixth Amendment right to effective assistance of counsel because his trial attorney Michelle Truesdale provided constitutionally deficient representation in the plea negotiation process that prejudiced him.

    (B)  If you did not appeal, explain briefly why not: N/A.

4. Did you appeal, or seek leave to appeal, to the highest state court?  ☒ Yes  ☐ No

    (A)  If yes, give the

        (1) Result: Petition for Leave to Appeal ("PLA") Denied

        (2)

        (3) Date of ruling: September 29, 2021

        (4) Issue raised:   The sole issue in the PLA was that Nissenbaum was denied his Sixth Amendment right to effective assistance of counsel because his trial attorney Michelle Truesdale provided constitutionally deficient representation in the plea negotiation process that prejudiced him.

    (B)  If you did not appeal, explain briefly why not: N/A

5. Did you petition the United States Supreme Court for a writ of *certiorari*?
    ☐ Yes  ☒ No

If yes, give (A) date of petition: N/A.

(B) Date *certiorari* was denied: N/A.

**PART II – COLLATERAL PROCEEDINGS**

1.  With respect to this conviction or sentence, have you filed a post-conviction petition in state court?

    ☐ Yes       ☒ No

    However, following the convictions and through new counsel, Nissenbaum brought a timely supplemental post-trial motion in the trial court raising his claim of ineffective assistance of counsel in the plea negotiation process. An evidentiary hearing was conducted on the motion. The trial court denied Nissenbaum's motion on March 28, 2019. This issue was appealed to the First District Illinois Appellate Court, which denied the claim on the merits and affirmed Nissenbaum's convictions and sentences on March 19, 2021. Nissenbaum's PLA to the Illinois Supreme Court was denied on September 29, 2021.

    With respect to *each* post-conviction petition give the following information (use additional sheets if necessary):

    A.  Name of court:  N / A

    B.  Date of filing: N/A

    C.  Issues raised: N/A

    D.  Did you receive an evidentiary hearing on your petition? N/A       ☐ Yes       ☐ No

    E.  What was the court's ruling? N/A

    F.  Date of court's ruling: N/A

    G.  Did you appeal from the ruling on your petition? N/A       ☐ Yes       ☐ No

    H.  (a) If yes,  (1) what was the result? N/A

                    (2) date of decision: N/A

        (b) If no, explain briefly why not: N/A

3

I. Did you appeal, or seek leave to appeal this decision to the highest state court? N/A

☐ Yes ☐ No

(a) If yes, (1) what was the result? N/A

(2) date of decision: N/A

(b) If no, explain briefly why not: N/A

2. With respect to this conviction or sentence, have you filed a petition in a **state court** using any other form of post-conviction procedure, such as *coram nobis* or habeas corpus?

☐ Yes ☒ No (except post-trial motion described above)

A. If yes, give the following information with respect to each proceeding (use additional sheets if necessary):

(a) Nature of proceeding: N/A

(b) Date petition filed: N/A

(c) Ruling on the petition: N/A

(d) Date of ruling: N/A

(e) If you appealed, what was the ruling on the appeal? N/A

(f) Date of ruling on appeal N/A

(g) If there was a further appeal, what was the ruling? N/A

(h) Date of ruling on appeal N/A

3. With respect to this conviction or sentence, have you filed a previous petition for habeas corpus in **federal court**? ☐ Yes ☒ No

A. If yes, give name of court, case title and case number: N/A

B. Did the court rule on your petition? If so, state

(1) Ruling: N/A

(2) Date: N/A

4. With respect to this conviction or sentence, are there legal proceedings pending in any court, other than this petition? ☐ Yes ☒ No
If yes, explain:

4

## PART III – PETITIONER'S CLAIMS

1. State <u>briefly</u> every ground on which you claim that you are being held unlawfully. Summarize <u>briefly</u> the <u>facts</u> supporting each ground. You may attach additional pages stating additional grounds and supporting facts. If you fail to set forth all grounds in this petition, you may be barred from presenting additional grounds later.

   **BEFORE PROCEEDING IN THE FEDERAL COURT, YOU MUST ORDINARILY FIRST EXHAUST YOUR STATE COURT REMEDIES WITH RESPECT TO EACH GROUND FOR RELIEF ASSERTED.**

   (A)   Ground one: Nissenbaum raises one single constitutional claim that he is being held in custody unlawfully: He was denied his Sixth Amendment right to effective assistance of counsel because his trial attorney Michelle Truesdale provided constitutionally deficient representation in the plea negotiation process that prejudiced him.

   Supporting facts (tell your story briefly without citing cases or law):

## TRIAL COURT PROCEEDINGS

On March 16, 2015, the State filed an Information against Petitioner-Defendant Nathan Nissenbaum, Case No. 2015 CR 03972, consisting of charges ranging from aggravated criminal sexual assault, criminal sexual assault, aggravated kidnapping, kidnapping, home invasion and aggravated domestic battery that he allegedly committed against his former romantic partner D.K. Nissenbaum pled not guilty. He was tried in a bench trial before the Hon. Alfredo Maldonado in the Circuit Court of Cook County at the George N. Leighton Criminal Court Building, 2600 South California Avenue, Chicago, Illinois 60608. Nissenbaum was represented at pre-trial and trial proceedings by Attorney Michelle Truesdale.

## THE TRIAL

The trial was commenced on June 13, 2017 and was continued over the course of several non-consecutive days, finishing on September 15, 2017. For the sake of brevity, this petition briefly

5

summarizes the testimony of only two of the many witnesses who testified at trial, the complainant D.K. and Nissenbaum. D.K. testified that she is an escort in the adult entertainment business and that Nissenbaum is her ex-boyfriend. Her romantic relationship with Nissenbaum started about December 2013 and ended in November 2014. In January 2015, a mutual no contact order was entered, barring Nissenbaum from having any contact with D.K.

D.K. further testified that on February 12, 2015, Nissenbaum made an appointment online by using a fake identification, posing as a client with the alias name Ricky Sing, and disguising himself as a man with dark skin, wearing sunglasses, a turban, and a dark beard. Nissenbaum surreptitiously gained entry into D.K.'s apartment wearing the disguise, then restrained D.K., laid her in her bed and forcibly had sex with her. Nissenbaum testified that his encounter with D.K. at her home was consensual. On September 15, 2017, at the conclusion of the bench trial, the trial judge found Nissenbaum guilty and convicted him of aggravated criminal sexual assault, home invasion, aggravated kidnapping and aggravated domestic battery.

## POST-TRIAL MOTION FOR INEFFECTIVE ASSISTANCE OF COUNSEL

Following Nissenbaum's conviction, he discharged Truesdale and retained new counsels James K. Leven and Joshua B. Kutnick, who brought a supplemental post-trial motion, claiming that Truesdale provided ineffective assistance of counsel in the plea negotiations with the State. The post-trial motion explained that prior to trial, the State had offered Nissenbaum probation in return for a guilty plea on aggravated domestic battery with the other charges to be dismissed, including the sexually-related charges. Nissenbaum claimed in his supplemental post-trial motion that due to ineffective assistance of his trial counsel Ms. Truesdale, he did not accept the State's offer. Instead, he went to trial and was convicted and sentenced to mandatory consecutive sentences and an

Rev. 06/29/2016

aggregate term of 14 years' imprisonment.

<u>EVIDENTIARY HEARING ON INEFFECTIVE ASSISTANCE CLAIM</u>

After conviction and prior to sentencing, the trial court conducted an evidentiary hearing on Nissenbaum's supplemental post-trial ineffective assistance claim with new counsels Leven and Kutnick representing Nissenbaum. ASA Jennifer Bagby, the attorney who prosecuted Nissenbaum, Nissenbaum's trial attorney Michelle Truesdale, and the defendant Nathan Nissenbaum all testified at the post-trial motion hearing.

ASA Jennifer Bagby testified that she was an Assistant State's Attorney assigned to the case of Nathan Nissenbaum in July or August of 2015. Bagby testified as to plea negotiations with Nissenbaum's counsel Ms. Michelle Truesdale. She sent a text to Truesdale indicating she was ready to offer a plea to aggravated domestic battery in return for probation and an order of protection. Bagby's text expressed her understanding that the State's Attorney administration probably would have her back on the offer even though she believed the victim D.K. would not be happy.

ASA Bagby indicated in the text that if Nissenbaum agreed to plead to aggravated domestic battery, she would dismiss all the other charges against Nissenbaum. (R 1347, 1348) Specifically, she testified at the evidentiary hearing that if "Mr. Nissenbaum indicated that he would be interested in negotiating a disposition on the case to aggravated domestic battery, yes. [she] would dismiss the other counts."

ASA Bagby testified that she and Truesdale appeared in court on April 11, 2017. Bagby further testified that she wanted to bring the case to a resolution that day, regardless of whether D.K. was coming to court, because of the age of the case and the serious nature of the charges. Bagby

explained that if Truesdale had approached her in court on April 11 and was willing to discuss the terms and conditions of a plea on aggravated domestic battery, she "would have negotiated a plea with Nissenbaum on that day [and] would have made him an offer on that day." Bagby testified in other words she would have consummated the plea that day, April 11, had Nissenbaum agreed to her offer.

D.K. appeared late at the victim assistance center of the court building sometime between 10:00 a.m. and noon after the court session ended. Nissenbaum and Truesdale had already left the courtroom when D.K. arrived. Bagby had a conversation with D.K. shortly after D.K.'s arrival. After Bagby's discussion with D.K., Bagby sent a text message to Truesdale at 12:40 p.m. on April 11, telling Truesdale that circumstances had changed and she could not plead the case out to anything other than a sex offense. As a result, the case proceeded to trial.

Attorney Michelle Truesdale, Nissenbaum's counsel, also testified at the post-trial motion hearing. Truesdale started representing Nissenbaum in approximately February or March 2015 and the representation extended through and shortly past the conclusion of the bench trial until Attorneys Leven and Kutnick began representing him. Truesdale testified at the post-trial motion hearing that she believed Nissenbaum was not facing consecutive sentencing at the time of the preliminary hearing even though she acknowledged that aggravated criminal sexual assault was one of the charges against him. A few months after the preliminary hearing, Truesdale received an email from Nissenbaum on June 2, 2015, stating that it would "suck" if he went to prison for 6 to 30 years without mentioning consecutive sentences. Truesdale did not recall if she addressed consecutive sentences with Nissenbaum at this point in her representation.

Truesdale raised a consent defense at trial but admitted she knew of many undisputed facts

8

that were not subject to a credibility assessment concerning whether to believe Nissenbaum or D.K., thus casting doubt on the consent defense. For example, it was undisputed that D.K. and Nissenbaum's had already ended their romantic relationship at the point in time when Nissenbaum had surreptitiously entered D.K.'s apartment on February 12, 2015. Truesdale also knew there was a mutual no contact order in effect barring Nissenbaum from making contact with D.K.

It was also undisputed that Nissenbaum booked an appointment with D.K., using the alias name of Ricky Sing. Truesdale also knew that Nissenbaum wore a disguise consisting of a turban, sunglasses and the use of mascara to alter his appearance to deceive D.K. into allowing him into her apartment. Truesdale further acknowledged the undisputed fact that Nissenbaum had sexual intercourse with D.K. in her apartment while he restrained her. Truesdale acknowledged that she did not tell Nissenbaum that he had a strong chance of losing the trial given the relationship between the consent defense and the undisputed facts pointing to the nonconsensual nature of the encounter.

Testifying on the plea negotiations, Truesdale noted that in the evening of March 23, 2017 at 6:45 p.m., Truesdale received an email from Nissenbaum giving her permission to discuss a plea deal with the State. The March 23, 2017 email from Nissenbaum stated that he was okay with a negotiated disposition with the State as long as it did not involve prison time or sex offender registration. At their March 23, 2017 meeting, however, Truesdale and Nissenbaum only discussed specific charges, not the consecutive sentencing that would be imposed if he decided to go to trial and was convicted.

On March 24, 2017, at 12:36 P.M. on the following day, Truesdale received a text reply from ASA Bagby that she could probably make an offer for probation on aggravated domestic battery and an order of protection. The administration would probably have her back though the victim might not be happy. Truesdale texted Bagby that she would relay it to Nissenbaum.

Rev. 06/29/2016

Truesdale claimed that she and Nissenbaum discussed the offer from the State at their March 28, 2017 meeting. Truesdale testified that she was not sure if they discussed the offer in light of possible and likely outcomes of a trial. Truesdale did not consider the merits of the offer for probation versus the mandatory consecutive sentencing, mandatory minimum sentence of 12 years and lifetime sex offender registration that would apply if Nissenbaum was found guilty at trial. At the March 28, 2017 meeting, Truesdale did not discuss probation if the offer was accepted and on the other hand if found guilty, a mandatory minimum sentence of 12 years and mandatory lifetime sex registration. Truesdale did not give Nissenbaum her informed judgment whether he should accept or reject the deal as she decided that it was his call to make that decision.

On April 11, 2017, the State's offer for probation and an order of protection was still on the table when Truesdale discussed the matter with ASA Bagby in the hallway at court either just before or after the case was called for hearing in front of the judge. Truesdale learned later that D.K. arrived at the court building after court was over. Truesdale acknowledged that if the State had firmed up its offer and Nissenbaum had accepted it, the plea would have been entered that day in court on April 11, 2017.

Truesdale testified about an August 28, 2017 email sent from Nissenbaum to Truesdale in the middle of the trial just before his testimony. Nissenbaum stated in the email that he would just like his life back and not go to prison for 6-30 years. When Truesdale saw Nissenbaum's email on her smart phone, she decided that she had to find out whether he was facing mandatory consecutive sentences. She thought the easiest way to get an answer to Nissenbaum's question was to ask the prosecuting attorney in the case ASA Jennifer Bagby. Truesdale claimed she could not send Nissenbaum the correct information on consecutive sentencing because she did not have her file with

her at her home.

Truesdale sent an email to Bagby, asking her about the statutory sentencing scheme. Bagby sent a response email to Truesdale, informing her that an act of aggravated criminal sexual assault is consecutive to aggravated kidnapping, so the minimum if convicted on aggravated criminal sexual assault and aggravated kidnapping was 12 years to be served at 85%. Truesdale texted back, thanking her for clarifying the sentencing scheme. Truesdale then emailed Nissenbaum on August 29, 2017 at 3:41 p.m., 29 months after becoming his attorney and after plea negotiations had concluded, informing him that if he was found guilty on both the aggravated kidnapping and either of the aggravated criminal sexual assault counts, they are mandatory consecutive so it's 12 years minimum at 85%, the rest of the counts are concurrent. Nissenbaum responded by email, asking in part whether Truesdale expected them to lose the trial.

The defendant Nathan Nissenbaum testified at the post-trial motion hearing. In the lockup just before the preliminary hearing in March 2015, Truesdale informed Nissenbaum that the sentencing range for Class X offenses was 6 to 30 years at 85%. Truesdale, however, did not explain consecutive and concurrent sentences. On June 6, 2015, Nissenbaum sent Truesdale an email, stating, "Man, it would suck if I went to prison for 6-30 years." Nissenbaum was expressing his fear of what he believed at the time was the worst case scenario if he was found guilty. When Nissenbaum said the sentencing range was 6 to 30 years, Truesdale never corrected him by phone, email, in person or by any other form of communication that sentencing was mandatory consecutive.

Nissenbaum had a phone conversation with Truesdale in February or March 2016 in which the topic of consecutive and concurrent sentences was discussed. Nissenbaum asked Truesdale if any of his charges were stacked. Truesdale asked him if stacked meant consecutive versus concurrent

Rev. 06/29/2016

sentences. Truesdale explained that consecutive sentences apply to a scenario where there are a number of victims and it is very violent, a situation that did not apply to Nissenbaum. Truesdale pointed out that all of Nissenbaum's potential sentences are concurrent.

Nissenbaum had another meeting with Truesdale at her office on March 23, 2017 in which they discussed the possibility of a plea deal. Nissenbaum testified about an email he sent on March 23, 2017 to Truesdale at 4:45 p.m. shortly after their meeting. Nissenbaum's email informed Truesdale that he would consider a deal as long as it did not involve prison time or sex offender registration. On March 24, 2017, the next day, Nissenbaum received an email from Truesdale that she had an offer from the State about which they would discuss at their previously scheduled meeting on March 28, 2017.

Nissenbaum met with Truesdale on March 28, 2017 at her law office. Truesdale told Nissenbaum that the State had proposed a plea to the Class 2 offense of aggravated domestic battery with probation and an order of protection. Truesdale and Nissenbaum had a discussion about the offer but Truesdale did not explain that if convicted, he could receive 12 to 60 years but if he took the offer he would receive probation. There was no discussion in the context of the plea offer whether consecutive or concurrent sentences applied. Truesdale did not provide a recommendation as to whether to accept or reject the offer.

On April 11, 2017, a few hours after court, Nissenbaum received an email from Truesdale that after the State had talked to D.K., the State was revoking its plea offer. That was a surprise to Nissenbaum because it had just been confirmed that the State would keep the offer open until trial. On April 11, 2017, Nissenbaum was in court unaware that the State could withdraw its offer for probation at any time even though the State had just promised to keep the offer open until trial.

Rev. 06/29/2016

On August 28, 2017, during the trial just before his trial testimony, Nissenbaum sent an email to Truesdale stating in part that he would just like to get his life back and not be in prison for the next 6 to 30 years. Truesdale emailed Nissenbaum that if he was found guilty of aggravated criminal sexual assault and aggravated kidnapping, the sentences would be consecutive and the sentencing range would be from 12 to 60 years at 85%. Nissenbaum had previously told Truesdale several times over the past two and a half years that the range was 6 to 30 years without Truesdale correcting him that consecutive sentences were mandatory. Truesdale never explained to Nissenbaum that a conviction for aggravated criminal sexual assault and another Class X felony was a likely result given the undisputed facts of the non-consensual nature of his encounter with D.K.

Nissenbaum testified he would have accepted the plea deal for probation, no prison time, and no sex offender registration had he known of a realistic probability of being convicted given the undisputed facts, not depending on credibility determinations, and that the sentencing range would have been 12 to 60 years. Even if the deal involved 6 months in jail or the most severe form of probation, he would have accepted the deal. Nissenbaum stressed that had he known of a very strong likelihood of being convicted that would have kept him in prison for over a decade, he would have accepted a deal with the State for the most severe form of probation on April 11, 2017 when the case came up in court.

## DENIAL OF POST-TRIAL MOTION AND SENTENCING HEARING

On March 28, 2019, the trial court denied Nissenbaum's post-trial motion claim of ineffective assistance of counsel in connection with plea negotiations. The sentencing hearing followed. On May 6, 2019, Nissenbaum was sentenced to 8 years for the aggravated criminal sexual assault, 6 years for home invasion to be served consecutively to the aggravated criminal sexual assault, a 6 years

Rev. 06/29/2016

concurrent sentence for aggravated kidnapping and a 5 years concurrent sentence for aggravated domestic battery. The aggregate sentence was 14 years (8 + 6 years mandatory consecutive on the aggravated criminal sexual assault and aggravated kidnapping).

## THE ILLINOIS APPELLATE COURT

Nissenbaum appealed the judgment of conviction and sentence to the Illinois Appellate Court, First District. See Illinois Appellate No. 1-19-1143. Nissenbaum's sole issue on appeal was whether he was deprived of his Sixth Amendment right to effective assistance of counsel in the plea negotiations, the same issue raised in his supplemental post-trial motion and which the trial court denied. On March 19, 2021, the Illinois Appellate Court, First District, released an unpublished Rule 23 order, affirming the judgment of the circuit court of Cook County and rejecting Nissenbaum's claim of ineffective assistance of counsel. *See People v. Nissenbaum*, 2021 IL App (1st) 191143-U. On April 13, 2021, Nissenbaum's petition for rehearing was denied and his PLA was denied on September 29, 2021.

## CONSTITUTIONAL CLAIM OF INEFFECTIVE ASSISTANCE

The Illinois Appellate Court decision rejecting Nissenbaum's claim was contrary to or an unreasonable application of established Supreme Court precedent and was based on an unreasonable determination of facts in light of the record. Nissenbaum had argued in the Illinois Appellate Court and continues to argue in this petition that the State extended Nissenbaum a lenient and generous plea offer of probation or the equivalent of no prison time in exchange for a plea to a single count of aggravated domestic battery with the other charges, including the sexually-related charges, to be dismissed. Due to Attorney Truesdale's ineffective assistance in the plea negotiation process,

Rev. 06/29/2016

Nissenbaum did not accept the State's plea offer for probation. Instead, he went to trial and was convicted of multiple offenses that included aggravated criminal sexual assault, home invasion, aggravated kidnapping and aggravated domestic battery. He was sentenced to a mandatory consecutive term of imprisonment totaling 14 years and is required to comply with lifetime sex offender registration. Nissenbaum was severely harmed and prejudiced by Truesdale's ineffective assistance.

## CONSTITUTIONALLY DEFICIENT PERFORMANCE

The Illinois Appellate Court expressly stated that it declined to address Nissenbaum's claim of constitutionally deficient performance. Nissenbaum's trial counsel Ms. Truesdale rendered constitutionally deficient advice falling below an objectively reasonable standard of performance in connection with the plea negotiations in a number of distinct ways. Truesdale acted unreasonably by manifesting her abject ignorance of Illinois mandatory sentencing law and by failing to inform Nissenbaum that mandatory consecutive sentences applied to him and that he would receive a mandatory minimum sentence of 12 years for a conviction of aggravated criminal sexual assault and a conviction for another Class X offense. Truesdale effectively communicated to Nissenbaum erroneously that only concurrent sentences would apply.

Truesdale also rendered constitutionally deficient advice by failing to advise Nissenbaum of the probable outcome of a trial, i.e. that it was reasonably probable that he would be convicted because of undisputed facts that incriminated him, overwhelming evidence of his guilt and no viable consent defense or any other affirmative defenses. In addition, Truesdale failed unreasonably to provide Nissenbaum with her informed professional judgment

15

whether to accept or reject the State's plea offer. Lastly, Truesdale performed unreasonably by failing to inform Nissenbaum that the State could legally withdraw the plea bargain at any time until it was accepted and entered by the court, notwithstanding the State having promised to keep the offer open until trial.

## CONSTITUTIONAL PREJUDICE

The Illinois Appellate Court decision rejecting Nissenbaum's claim of constitutional prejudice was contrary to or an unreasonable application of established Supreme Court precedent and was based on an unreasonable determination of facts in light of the record. Truesdale's constitutionally deficient advice Nissenbaum prejudiced and harmed Nissenbaum because there is a reasonable probability he would have accepted the State's plea offer for probation had he received effective assistance. Nissenbaum would have accepted the State's generous plea deal for probation, no prison time, and no sex offender registration in exchange for a guilty plea to aggravated domestic battery had he known of a realistic probability of being convicted of multiple Class X offenses, including sex crimes, and a mandatory minimum of 12 years' imprisonment upon conviction, given undisputed, incriminating facts, overwhelming evidence of guilt, and a non-viable consent defense. Constitutionally effective advice from Truesdale would have enabled Nissenbaum to compare the highly probable, dismal trial and sentencing outcome to the State's generous plea offer of probation with no prison time.

In this regard, Nissenbaum relies on independent, objective, verifiable evidence that corroborates his testimony that he would have accepted the plea had he received effective assistance. This consists of the following: there is a rather stark and dramatic sentencing differential between the plea offer for probation (no prison time) and the mandatory minimum sentence of 12 years and his

16

actual aggregate sentence of 14 years' imprisonment. Even the Illinois Appellate Court whose opinion Nissenbaum is challenging remarked: "we agree that there is a great disparity between 12 years in prison and the offer of an indeterminate length of probation." The stark contrast between the multiple Class X counts on which Nissenbaum was convicted, including aggravated criminal sexual assault, and the plea offer to a single Class 2 non sexually-related count also demonstrates prejudice.

Truesdale's deficient performance in failing to provide Nissenbaum with her informed judgment whether to accept the State's plea offer for probation also prejudiced him because there is a reasonable probability he would have accepted the deal had he known from counsel that undisputed facts incriminated him, the strong probability of conviction, overwhelming evidence of guilt, and no viable consent defense or any other affirmative defenses.

Nissenbaum's verified willingness during the plea negotiations to reach a negotiated disposition corroborated through emails and texts further supports his testimony that he would have accepted a plea offer for probation had he received effective assistance.

The State's offer to Nissenbaum reflected the features of a specific, formal offer whose material terms were objectively verifiable and would have been accepted but for constitutionally deficient advice. Nissenbaum's sentence under the offer was probation. The offer was clear as to which charge Nissenbaum would plead guilty: the Class 2 offense of aggravated domestic battery. The other charges, including the Class X charges of aggravated criminal sexual assault, home invasion, and aggravated kidnapping along with the other charges were to be dismissed. The State's offer was communicated to Truesdale in writing through a verifiable text, not an informal off-the-cuff conversation. Even if assuming the State had not extended a formal offer, there is a reasonable probability that the State would have formalized its offer, which Nissenbaum would have accepted,

Rev. 06/29/2016

had Truesdale been competent.

Had Nissenbaum received effective assistance and been told by Truesdale of mandatory consecutive sentences upon conviction, a mandatory minimum sentence of 12 years' imprisonment, a low probability of success at trial because there were no viable defenses because of undisputed incriminating facts, and that the State could withdraw its generous offer for probation at any time despite promising to keep its offer open until trial, there is a reasonable probability that Nissenbaum would have accepted the offer for probation and entered a guilty plea at the April 11, 2017 hearing before the State could revoke its offer after court.

Had Truesdale provided competent representation, there is a reasonable probability that the trial court would have accepted and entered the State's offer in court as a binding plea agreement in the morning on April 11, 2017, before the State decided to withdraw its offer later that day. Since the offer would have been formalized as a binding order entered by the court, the State would not have been legally entitled to withdraw it.

The State's plea offer for probation or no prison time in exchange for a plea to the Class 2 offense of aggravated domestic battery was substantially more favorable to Nissenbaum than conviction on significantly more serious multiple Class X offenses, including sex crimes, and a 14-year aggregate mandatory consecutive prison term by going to trial.

<u>REQUEST TO FILE A MEMORANDUM OF LAW</u>

Nissenbaum shall be filing a motion in this case soon after the filing of this petition, seeking leave to file a memorandum of law in support of this petition, and if this request is granted, the memorandum shall be filed soon thereafter. The memorandum has been substantially prepared.

Rev. 06/29/2016

## THE REMEDY FOR NISSENBAUM'S CLAIM UNDER GROUND ONE

The remedy for Nissenbaum's meritorious claim of ineffective assistance of counsel under the Sixth Amendment to the U.S. Constitution is to grant his petition for a writ of habeas corpus pursuant to § 2254, vacate his convictions and sentences, release him from imprisonment and confinement and order the State to re-offer its plea bargain offer.

(B)     Ground two N/A
          Supporting facts:

(C)     Ground three N/A
          Supporting facts:

(D)     Ground four _N/A
          Supporting facts:

2.     Have all grounds raised in this petition been presented to the highest court having jurisdiction?

☒  Yes ☐   No

3.  If you answered **"NO"** to question (2), state <u>briefly</u> what grounds were not so presented and why not: N/A

## PART IV – REPRESENTATION

Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:

(A)     At preliminary hearing: Michelle M. Truesdale, 5310 N. Harlem Avenue, Suite 210, Chicago, Illinois 60656

(B)     At arraignment and plea: Michelle M. Truesdale

Rev. 06/29/2016

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

(C)    At trial: Michelle M. Truesdale

At post-trial motion hearing: James K. Leven, 203 North LaSalle Suite 2100, Chicago Illinois, 60601 and Joshua B. Kutnick, 900 West Jackson Blvd. Suite 7E, Chicago, Illinois 60607

(D)    At sentencing: James K. Leven and Joshua B. Kutnick

(E)    On appeal:  James K. Leven

(F)    In any post-conviction proceeding: N/A

(G)    Other (state):N/A


## PART V – FUTURE SENTENCE

Do you have any future sentence to serve following the sentence imposed by this conviction?

☐  Yes     ☒   No

Name and location of the court which imposed the sentence: N/A

Date and length of sentence to be served in the future: N/A

WHEREFORE, petitioner Nathan Nissenbaum prays that the court grant him all relief to which he may be entitled in this proceeding.

Signed on: December 19. 2022              /s/ James K. Leven _____
              (Date)                         Signature of attorney

                                          James K. Leven (ARDC #6193058)
                                          Attorney for Petitioner-Defendant Nathan Nissenbaum
                                          203 North LaSalle, Suite 2100
                                          Chicago, Illinois 60601
                                          Phone: 312-558-1638
                                          Facsimile: 312-346-9603
                                          E-mail address: jameskleven@attorneyleven.com

Rev. 06/29/2016