**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **NATHAN NISSENBAUM,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 22 C 7159** |
| | ) | |
| **CHAD JENNINGS,[1] Warden,** | ) | |
| **Taylorville Correctional Center,** | ) | |
| | ) | |
| **Respondent.** | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

MATTHEW F. KENNELLY, District Judge:

In 2017, Nathan Nissenbaum was convicted of aggravated criminal sexual assault, home invasion, aggravated kidnapping, and aggravated domestic battery after a bench trial in the Circuit Court of Cook County. He was sentenced to fourteen years in prison. In 2022, after exhausting the Illinois appellate process, Nissenbaum filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254. He asserts that his trial counsel rendered ineffective assistance of counsel in violation of his Sixth Amendment rights. For the reasons stated below, the Court denies Nissenbaum's petition.

**Background**

The Court takes the relevant facts from the state appellate court's decision, which

---

[1] When Nissenbaum filed his petition, he was in the custody of Melinda Eddy, warden of Taylorville Correctional Center. Nissenbaum has since been transferred to the custody of Chad Jennings, warden of Robinson Correctional Center. The Court substitutes Jennings as the respondent. *See Henderson v. DeTella*, 97 F.3d 942, 942 (7th Cir.1996).

are presumed correct under 28 U.S.C. § 2254(e). Nissenbaum's claims stem from his conviction for the sexual assault of his former girlfriend, D.K. D.K. and Nissenbaum were in a relationship from December 2013 to November 2014. Shortly after the relationship ended, D.K. was granted an emergency order of protection against Nissenbaum, and a mutual no-contact order was entered. On February 11, 2015, Nissenbaum booked an appointment for D.K.'s escort business using a fake name. Unaware that the new client was Nissenbaum, D.K. scheduled an appointment with Nissenbaum for the following morning. The next day, Nissenbaum arrived at D.K.'s apartment wearing a disguise. After entering D.K.'s apartment, Nissenbaum bound her to the bed and sexually assaulted her at gunpoint. After removing D.K.'s bindings, Nissenbaum announced he was going to commit suicide, and D.K. ran outside to call the police. When the police arrived, they found a small fire in D.K.'s bathroom and Nissenbaum sitting in D.K.'s bathtub with razor blade cuts on his arms. The police also learned that the gun that Nissenbaum had held to D.K.'s head was a BB gun.

## A. Pre-trial

Nissenbaum was indicted on March 19, 2015, and he retained Michelle Truesdale as his attorney. In July 2015, Truesdale contacted Assistant State's Attorney (ASA) Mary Innes to discuss a possible plea deal on the attempted aggravated arson charge. According to Truesdale, plea negotiations stalled because Nissenbaum said that he was not interested in pleading guilty to a felony charge. Nissenbaum asserts that he was interested in exploring whether the prosecution would be willing to negotiate a plea on a misdemeanor charge, but discussions broke down before an agreement was reached. Innes later withdrew the invitation to discuss a plea offer.

2

Truesdale and Nissenbaum met in person multiple times, and they exchanged several emails to discuss his case.  On December 14, 2016, Nissenbaum met Truesdale in her office to review a copy of the charging document.  On the document, Truesdale placed sticky notes next to each charge, with information about the class, sentencing range, and potential defenses.  The sticky notes accompanying the aggravated sexual assault counts included the notation "consec," which Truesdale testified meant either "consecutive," or a reference to another count that included the "consec" notation.

On March 23, 2017, Truesdale sent a text message to the new ASA that had been assigned to replace Innes, Jennifer Bagby.  In her message, Truesdale asked "[j]ust so I cover all grounds, was there ever an offer tendered on this?"  Pet'r's Mem., Ex. A ¶ 22.  Bagby replied stating:

> I think my previous position was that I could only make an offer on a sex count.  I think things have changed and I could probably make an offer on an agg[ravated] domestic battery for probation and an order of protection.  I think the current administration will have my back on this even though the victim will not be happy.

*Id.*  That evening, Nissenbaum emailed Truesdale that he was interested in a plea deal "as long as it did not involve prison time, sex offender registration, or a felony record."  Pet'r's Mem. at 29-30.  Nissenbaum's email included an attachment in which he stated: "[i]f there is a chance that anything will give me a shot at moving forward in a world without a felony, [my parents] will support it and pay for it."  Pet'r's Mem., Ex. A ¶ 25.  At a meeting on March 28, 2017, Nissenbaum and Truesdale discussed Bagby's text message, and Nissenbaum told Truesdale that he would like to discuss the potential plea with his family.

On April 11, 2017, Nissenbaum and Truesdale attended an in-person court hearing.  They met before or after the hearing, but the parties disagree about the subject matter of the conversation.  Truesdale says that they discussed Nissenbaum's interest in Bagby's potential plea offer, but Nissenbaum says that the conversation revolved around the expiration date for the plea offer and that Truesdale told him the offer would be open until trial.  D.K. did not attend the hearing but met with Bagby after the hearing concluded.  After meeting with D.K., Bagby texted Truesdale that she "cannot plead this out to anything other than a sex offense."  State Ct. R., Ex. J at R1362.  After receiving Bagby's text message, Truesdale emailed Nissenbaum that D.K. "won't agree to the state's offer to a plea on the aggravated domestic battery so it is no longer on the table.  The offer is now a plea on one of the sex offenses."  Pet'r's Mem., Ex. A ¶ 29.

## B.    Trial

Nissenbaum's bench trial began on June 13, 2017 and was conducted intermittently over an extended period.  On August 29, 2017, while the trial was in recess, Nissenbaum sent Truesdale an email stating, "I would just like my life back and no [sic] find myself in prison for the next 6-30."  State Ct. R., Ex. L at C594.  Upon receiving Nissenbaum's email, Truesdale emailed Bagby:

> Are the two counts of agg CSA that you went on in our case mandatory consecutive? I haven't looked that statute up in a while, so I wasn't sure[.] If you don't know off hand, that's fine I can find it in my file, which I pulled way back in the beginning of the case[.]

State Ct. R., Ex. K at C637.  The next day, Bagby responded that the sentence on the aggravated criminal sexual assault charge would be consecutive to that on the aggravated kidnapping charge and that if Nissenbaum was convicted of both charges,

the minimum sentence would be twelve years.  Truesdale then emailed Nissenbaum and stated that he faced a minimum of twelve years if found guilty of both aggravated kidnapping and aggravated criminal sexual assault.

On September 15, 2017, the trial judge found Nissenbaum guilty of aggravated criminal sexual assault, home invasion, aggravated kidnapping and aggravated domestic battery.  The judge sentenced Nissenbaum to consecutive terms of eight years in prison for aggravated criminal sexual assault and six years for home invasion. Nissenbaum also received a six-year concurrent sentence for aggravated kidnapping and a five-year concurrent sentence for aggravated domestic battery.

## C.  Post-trial

Following his conviction, Nissenbaum filed multiple post-trial motions alleging that he received ineffective assistance from Truesdale.  The judge who had presided over Nissenbaum's trial considered his post-trial motions. The trial judge held an evidentiary hearing on Nissenbaum's ineffective assistance of counsel claim and heard testimony from Nissenbaum, Truesdale, and Bagby.

### 1.  Mandatory consecutive sentences

At the evidentiary hearing, Nissenbaum testified that Truesdale told him in early 2016 that he was not at risk of receiving consecutive sentences.  Truesdale denied that contention.  Nissenbaum further testified that he was unaware that he could be subject to consecutive sentences until Truesdale's August 29, 2017 email.  Nissenbaum referenced his belief that he faced a six-year minimum sentence in a June 2015 email to Truesdale.  Truesdale did not respond to that email; she testified at the hearing that she could not recall whether she had discussed consecutive sentencing with Nissenbaum at

that time.

Nissenbaum acknowledged during his testimony that he viewed the charging documents with the "consec" notations in Truesdale's office during their December 14, 2016 meeting, but he denied that Truesdale discussed the notations with him. When asked why the "consec" notations were written in a different colored ink than the other notes, Truesdale testified that these notations were written at a different time, but she stated that all of these notations were present when she reviewed the charges with Nissenbaum in her office during the December 2016 meeting. Truesdale further testified that she told Nissenbaum during this meeting that the sentences on the sex offense charges would be served consecutively with sentences on any other charges.

### 2.    Plea offer

Nissenbaum testified that Truesdale told him that there was a "strong possibility" of acquittal and that he faced only a "light sentence." State Ct. R., Ex. I at 3-4. Truesdale denied this and testified that she advised Nissenbaum of "realistic expectations" for the result of the trial "many times," and "told him that there was a possibility that he could lose" the case. *Id.*, Ex. J at R1474-75. Truesdale further testified that her opinion of Nissenbaum's chances of acquittal fluctuated over the course of her representation due to factors such as D.K.'s inconsistent cooperation with the prosecution and the viability of Nissenbaum's consent defense. *Id.* at R1473, R1476.

ASA Bagby testified that her March 2017 text message to Truesdale was not an "offer for [Nissenbaum] to accept" but instead was an "initiation of a conversation about making an offer." *Id.* at R1347. When asked if she intended to extend a plea offer

6

through her communications with Truesdale, Bagby responded "no." *Id.* at R1352. Truesdale testified, consistently with Bagby, that she didn't understand Bagby's text message to be a "firm offer" but instead considered it as the start of plea negotiations. *Id.* at R1486.

Nissenbaum testified that when he learned of Bagby's text message, Truesdale did not make a recommendation on whether he should accept the proposal. Nissenbaum told Truesdale that he wanted to talk to his family about the proposal and would make a decision ahead of the April 11, 2017 court date. *Id.* at R1630. Nissenbaum and Truesdale gave conflicting accounts about conversations that they had at the April 11 hearing. Truesdale testified that she asked Nissenbaum either just before or after the hearing whether he wanted her to pursue a plea offer and that he indicated he was interested in proceeding to trial. Nissenbaum testified that he met with Truesdale outside the courtroom before the hearing but did not discuss the plea proposal with her because he believed Truesdale was "going to confer [sic] with the State that it was open till [sic] trial." Pet'r's Mem., Ex. A ¶ 28. Nissenbaum testified that after the hearing, Truesdale told him that Bagby confirmed that the offer would be open until trial.

Nissenbaum testified that if he had known that he was at risk of mandatory consecutive sentences and that conviction on one of the felonies was a "real, very probable likelihood," he would have accepted the terms of the plea proposal included in Bagby's text message. State Ct. R., Ex. J at R1641. Nissenbaum also stated that he would have communicated his acceptance of the proposal during his April 11, 2017 court hearing if he had known that the offer could be revoked at any time. *Id.* at R1642.

7

Truesdale, by contrast, testified that Nissenbaum was "adamant" about not wanting to accept a plea deal that included a felony charge because "he wanted to work with kids." *Id.* at R1492-93.  Truesdale also said that Nissenbaum was "very adamant that he didn't do the things that were alleged against him" and therefore wanted to proceed to trial. *Id.* at R1501.

On March 28, 2018, the trial judge issued a decision denying Nissenbaum's posttrial motion.  The court found that Bagby's text message did not constitute a formal plea offer.  The court also noted that although there was a possibility that Truesdale failed to accurately advise Nissenbaum on consecutive sentencing, Nissenbaum was "reasonably informed" of the potential consequences of accepting or rejecting a plea offer, and therefore Truesdale's assistance was not deficient.  State Ct. R., Ex. M at R1763.  The court also found Nissenbaum's testimony that he did not know that plea offers were revocable to lack credibility and found that the evidence in the record made it "clear that Mr. Nissenbaum did not want an offer."  *Id.* at R1764.  Finally, the court concluded that even if Truesdale's assistance was deficient, Nissenbaum had failed to demonstrate that he was prejudiced because he did not show that there was a reasonable probability that he would have accepted the plea offer in the absence of Truesdale's allegedly deficient performance.

**D.    State appellate proceedings**

Nissenbaum appealed, arguing that the trial court erred in overruling his ineffective assistance claim.  The appellate court declined to address whether Truesdale's performance was deficient, but it affirmed the trial court's determination that Nissenbaum had not been prejudiced by the claimed ineffective assistance.  *See*

*People v. Nissenbaum*, 2021 IL App (1st) 191143-U, 2021 WL 1085228.  Noting the "tentative language" as well as the lack of "formalized terms" in Bagby's text message, the court agreed with the trial court that Nissenbaum did not receive a formal plea offer. *Id.* ¶ 45.  The court deferred to the trial court's factual finding that Nissenbaum "failed to show that he would have accepted this 'offer' but for his attorney's ineffective assistance," concluding that this finding was "not contrary to the manifest weight of the evidence."  *Id.* ¶ 48.  The court ended its discussion of the evidence that Nissenbaum would not have accepted a plea offer by stating that:

> Mr. Nissenbaum has failed to demonstrate a reasonable probability that, but for counsel's deficient performance, he could or would have accepted a plea offer from the State.  He has fallen far short of demonstrating that the trial court's finding that this probability did not exist was contrary to the manifest weight of the evidence.

*Id.* ¶ 59.

Nissenbaum filed a petition for leave to appeal (PLA) in the Illinois Supreme Court.  The court denied Nissenbaum's PLA.  *See People v. Nissenbaum*, 175 N.E.3d 72 (2021).

## Discussion

Nissenbaum's ineffective assistance claim in this case involves his trial counsel's alleged failure to advise him, until it was too late, that he would face a twelve-year mandatory sentence if convicted at trial.  *See* Pet'r's Mem. at 5 ("Truesdale did not inform Nissenbaum that he was subject to mandatory consecutive sentences and a mandatory minimum sentence of 12 years' imprisonment upon conviction at trial. Truesdale misled Nissenbaum into believing that the statutory minimum was 6 years,

only half the time he was actually subject to.").[2]  Nissenbaum contends that if he had

known this earlier, there is a reasonable probability that "he would have accepted the

State's plea deal for probation."  *Id.* at 18; *see, e.g., id.* at 25 ("A reasonable probability

existed . . . that Nissenbaum would have accepted the State's generous and lenient

deal for probation . . . had Truesdale given Nissenbaum her reasoned judgment on

whether to take the plea in light of overwhelming evidence of Nissenbaum's guilt and

the mandatory minimum of 12 years' imprisonment.").

## A.    Standard of review

Under the Antiterrorism and Effective Death Penalty Act (AEDPA), a federal court

may issue a writ of habeas corpus only if (1) the state court decision "was contrary to, or

involved an unreasonable application of, clearly established Federal law, as determined

by the Supreme Court of the United States" or (2) the state court decision "was based

on an unreasonable determination of the facts in light of the evidence presented in the

State court proceeding."  28 U.S.C. § 2254(d)(1)-(2).  A state court decision that is

"contrary to" clearly established federal law is one that "applies a legal standard

inconsistent with governing Supreme Court precedent or contradicts the Supreme

Court's treatment of a materially identical set of facts."  *Rodriguez v. Gossett*, 842 F.3d

531, 537 (7th Cir. 2016) (citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)).  An

"unreasonable application" of clearly established federal law occurs when the state

court "identifies the correct legal rule but applies it in a way that is objectively

unreasonable."  *Rodriguez*, 842 F.3d at 537 (citing *Yarborough v. Gentry*, 540 U.S. 1, 5

---

[2] *See also id.* at 7-8 ("Truesdale did not convey to Nissenbaum his actual sentencing
risk until August 28, 2018, just before he was set to take the witness stand at trial and
long after the State had withdrawn its plea offer for probation on April 11, 2017.").

(2003)). For ineffective assistance of counsel claims, the federal court's habeas review is "doubly deferential" in order to "give[] both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, 571 U.S. 12, 15 (2013). Additionally, the petitioner "bears the burden of rebutting the state court's factual findings 'by clear and convincing evidence.'" *Id.* at 18 (quoting 28 U.S.C. § 2254(e)(1)).

**B.    Assessment of Nissenbaum's claim**

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-part test for assessing ineffective assistance of counsel claims. The Illinois Appellate Court correctly identified this standard and stated that to support a claim of ineffective assistance of trial counsel, the defendant must show that (1) counsel's representation was deficient and (2) that deficient performance resulted in prejudice to the defendant. *Nissenbaum*, 2021 WL 1085228, ¶ 42 (citing *Strickland*, 466 U.S. at 687).

The parties dispute the proper standard that should be applied to determine whether Nissenbaum's counsel's performance was constitutionally deficient. But this Court need not reach that issue. When applying *Strickland*, "there is no reason for a court . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *McDaniel v. Polley*, 847 F.3d 887, 893 (7th Cir. 2017) (quoting *Strickland*, 466 U.S. at 697). Here, because Nissenbaum's claim falls short on the issue of prejudice, the Court need not address the deficient performance issue. *See Morales v. Johnson*, 659 F.3d 588, 600 (7th Cir. 2011) ("We need not address both prongs of the *Strickland* analysis.").

To demonstrate prejudice, a petitioner must "show that there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Lafler v. Cooper*, 566 U.S. 156, 163 (2012). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Julian v. Bartley*, 495 F.3d 487, 498 (7th Cir. 2007) (quoting *Strickland*, 466 U.S. at 694). When a habeas corpus petitioner argues that his counsel's deficient performance resulted in him rejecting a plea deal, he must demonstrate that in the absence of his counsel's deficiencies: (1) he would have accepted the plea offer; (2) the prosecution would not have withdrawn the plea offer; and (3) the trial court would have accepted the plea offer. *Missouri v. Frye*, 566 U.S. 134, 147 (2012); *Lafler*, 566 U.S. at 164.

The Illinois Appellate Court found that Bagby's text message referencing a plea deal did not constitute a formal plea offer, and even if it did, there was no reasonable probability that Nissenbaum would have accepted the offer and that the state would not have withdrawn it. Nissenbaum argues that this Court should review his claims de novo because the state court's decision was contrary to or unreasonably applied *Strickland*. Nissenbaum also argues that the appellate court's decision was based on an unreasonable determination of the facts presented in the state court proceedings.

### 1.  Standard of review

"[A] state court's decision is 'contrary to' federal law if it is 'substantially different' from or 'opposite to' relevant Supreme Court precedent." *Allen v. Chandler*, 555 F.3d 596, 601 (7th Cir. 2009) (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)). And with regard to unreasonable application, "the bar for establishing the unreasonableness of a state court's application of *Strickland* is a high one, and only a clear error in applying *Strickland* will support a writ of habeas corpus." *Jones v. Brown*, 756 F.3d

1000, 1007 (7th Cir. 2014) (internal quotation omitted).

The Illinois Appellate Court correctly stated the standard for demonstrating prejudice in the event of the rejection of a plea offer that the Supreme Court established in *Frye*, 566 U.S. at 138. Pet'r's Mem., Ex. A ¶ 43. The appellate court also correctly noted that when determining whether a petitioner has met the reasonable probability standard, "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Nissenbaum argues that the appellate court's decision was contrary to or unreasonably applied *Strickland* because it gave improper deference to the trial court's decision.

Nissenbaum points to portions of the appellate court's decision that reference the "manifest weight of the evidence" to support his argument that the Illinois Appellate Court "wrongly applied a more onerous and difficult to satisfy" standard than the standard established in *Strickland*. Pet'r's Mem. at 16. Illinois appellate courts "review a defendant's claim of ineffective assistance of counsel in a bifurcated fashion." *People v. Walker*, 2021 IL App (4th) 190073 (citation omitted). Specifically, appellate courts "defer to the trial court's findings of fact unless they are contrary to the manifest weight of the evidence" and review de novo "the ultimate legal question of whether counsel was ineffective." *Id.* Under the manifest weight of the evidence standard, deference is given to the trial court's findings of fact unless "the opposite conclusion is clearly evident or if the finding itself is unreasonable, arbitrary, or not based on the evidence presented." *People v. Deleon*, 227 Ill. 2d 322, 332, 882 N.E.2d 999, 1005 (2008).

Nissenbaum cites *United States v. Holman*, 314 F.3d 837 (7th Cir. 2002), in support of his argument that the Illinois Appellate Court should have reviewed his claims

13

de novo and should not have deferred to the trial court's factual findings, but this argument lacks merit.  In *Holman*, the Seventh Circuit noted that *Strickland* claims are "a mixed question of law and fact that we review de novo." *Holman*, 314 F.3d at 835. But the "de novo" standard that the Seventh Circuit referenced in *Holman* applies to federal appellate court review of a federal district court's denial of a 28 U.S.C. § 2255 motion, not state appellate court review of a state trial court judgment.   *See Allen*, 555 F.3d at 600 (describing the federal appellate standard of review for ineffective assistance of counsel claims under AEDPA).  The Illinois appellate court's authority to rule on Nissenbaum's petition was derived from state, not federal, law, *see* ILL. S. CT. R. 604, and Nissenbaum points to no legal authority in support of the proposition that the federal constitution requires state appellate courts to apply a de novo review standard to trial court factual findings on ineffective assistance of counsel claims.  Illinois's established appellate review process requires appellate court to give "great deference" to findings of fact by a trial court due to "the reality that the [trial] court is in a superior position to determine and weigh the credibility of the witnesses, observe the witnesses' demeanor, and resolve conflicts in their testimony." *People v. Richardson*, 234 Ill. 2d 233, 251, 917 N.E.2d 501, 512–13 (2009); *People v. Reeves*, 2021 IL App (1st) 170978-U, ¶ 45 (noting deference afforded to trial court's factual findings on ineffective assistance of counsel claims).  In short, the state appellate court did not unreasonably apply federal law in reviewing the state trial court's decision on the post-conviction petition.

Nissenbaum also asserts that the Illinois Appellate Court improperly "fell back on its manifest weight of the evidence standard" when analyzing his claims.  Pet'r's Mem.

at 16.  But in each of the instances that Nissenbaum identifies, the appellate court applied the manifest weight of the evidence standard to the trial court's *factual* findings, not his legal arguments.  Specifically, the appellate court concluded that the trial court's finding that Nissenbaum was not willing to accept Bagby's plea offer was not against the manifest weight of the evidence.  Pet'r's Mem., Ex. A ¶¶ 48, 53, 55, 60.  Whether or not a defendant would have accepted a plea offer is a "factual determination."  *Alkhalidi v. Warden*, No. 3:17-CV-185-PPS-MGG, 2019 WL 450707, at *8 (N.D. Ind. Feb. 1, 2019), aff'd, *Alkhalidi v. Neal*, 963 F.3d 684 (7th Cir. 2020); *Walters v. Martin*, 18 F.4th 434, 443 (4th Cir. 2021) (noting state court's determination that petitioner was unwilling to accept a plea deal was a factual finding).  The appellate court did not err by applying the manifest weight of the evidence standard to the trial court's factual findings on the issue of whether Nissenbaum was willing to accept Bagby's plea proposal.

The appellate court references the manifest weight of the evidence standard in the context of its legal determinations in one paragraph of its opinion, stating that Nissenbaum "has fallen far short of demonstrating that the trial court's finding that this probability did not exist was contrary to the manifest weight of the evidence." *Nissenbaum*, 2021 WL 1085228, ¶ 59.  "When examining a state court's articulation of the *Strickland* standard, we must keep in mind 'the presumption that state courts know and follow the law' and give their articulation of that standard 'the benefit of the doubt.'" *Olvera v. Gomez*, 2 F.4th 659, 670 (7th Cir. 2021) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002)).  Given that the appellate court correctly stated the *Strickland* standard earlier in its decision, this one-line summation of the appellate court's conclusion regarding Nissenbaum's inability to meet his burden under the reasonable

15

probability standard is insufficient to demonstrate that the decision was contrary to established federal law. *See Fayemi v. Ruskin*, 966 F.3d 591, 594 (7th Cir. 2020) ("[W]e do not attribute to the state's judiciary an unexplained replacement of the correct standard with an incorrect one."). Although Nissenbaum suggests that the appellate court's language indicates that the manifest weight of the evidence standard was applied to the legal question of reasonable probability, "[h]aving expounded the well-known standard correctly" earlier in its opinion, "it is more likely that the court stated its conclusion imprecisely than that it applied a different standard." *Stanley v. Bartley*, 465 F.3d 810, 813 (7th Cir. 2006). Reading the appellate court's opinion in its entirety, there is no basis to conclude that the appellate court applied a standard contrary to or unreasonably applied *Strickland*. This Court will therefore review Nissenbaum's ineffective assistance of counsel claim under the deferential standard of review established by AEDPA.

### 2. Prejudice

"[A] state court's determination that a defendant was not prejudiced by his lawyer's ineffectiveness is entitled to great weight in a federal habeas corpus proceeding." *Gilbreath v. Winkleski*, 21 F.4th 965, 991 (7th Cir. 2021) (citation omitted). Nissenbaum points to several pieces of evidence that he believes sufficient to demonstrate that Bagby extended a formal plea offer, that there is a reasonability probability that he would have accepted Bagby's plea offer, and that the State wouldn't have withdrawn it. But "the highly deferential habeas review does not permit a federal court to conduct its own independent inquiry and reweigh factors as a de novo matter." *Lentz v. Kennedy*, 967 F.3d 675, 690 (7th Cir. 2020). To prevail on his claim that the

appellate court's decision was unreasonable, Nissenbaum must show that the appellate court's ruling on his claim of prejudice "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103. Nissenbaum has not shown that the appellate court's determination that he had not established prejudice under *Strickland* was unreasonable.

### a. Formal offer

Nissenbaum argues that the appellate court erred in finding that Bagby had not extended Nissenbaum a formal offer. This argument is unpersuasive for two reasons. First, "[t]he question whether there was or was not an offer of a plea bargain is a quintessential question of fact." *Kerr v. Dittmann*, 744 F.3d 483, 487 (7th Cir. 2014). And the appellate court's factual finding that the contents of Bagby's text message did not amount to a formal plea offer was amply supported by the record. Bagby testified that the message "wasn't an offer for [Nissenbaum] to accept" and was instead "an initiation of a conversation." *Nissenbaum*, 2021 WL 1085228, ¶ 24. Similarly, Truesdale testified that she considered Bagby's text message as the start of "negotiations" rather than a formal offer. *Id.* ¶ 23. As the appellate court noted, Bagby used conditional rather than definite language in her text message, stating that she could "*probably* make an offer" and that she "*think[s]*" the administration would approve the terms of her proposal. *Id.* ¶ 45 (emphasis added). Nissenbaum argues that the terms of the proposal were "definitive as sentencing," because it offered probation, meaning no prison time. Pet'r's Mem. at 32. But Bagby's proposal lacked several key terms that would need to be agreed upon before an offer could be finalized, including

the length and conditions of any term of probation.  *See Nissenbaum*, 2021 WL 1085228, at *5.  In sum, Nissenbaum has not presented clear and convincing evidence that supports overturning the appellate court's factual finding.

Second, Nissenbaum contends that the appellate court's decision contradicts the "meaning of a formal offer" as established in *Frye*, Pet'r's Mem. at 31, but this contention misinterprets the Supreme Court's language in that case. In *Frye*, the Supreme Court held that defense counsel has a duty to communicate formal plea offers to the accused.  *Frye*, 566 U.S. at 145.  Acknowledging the possibility that petitioners could bring false allegations of uncommunicated plea offers, the Supreme Court suggested several "measures" that prosecutors and trial courts could adopt in order to defend against "late, frivolous, or fabricated claims."  *Id.* at 146.  In discussing these measures, the Supreme Court noted that "the fact of a formal offer means that its terms and its processing can be documented so that what took place in the negotiation process becomes more clear if some later inquiry turns on the conduct of earlier pretrial negotiations."  *Id.*

The Court's reference to the "fact of a formal offer" identifies a safeguard against frivolous ineffective assistance of counsel claims, not a requirement for what constitutes a "formal offer" under federal law.  *See United States v. Brooks*, No. 10-20078-JWL, 2015 WL 5837636, at *5 (D. Kan. Oct. 6, 2015) ("[I]n this passage, the Court is merely describing ways in which a government or a court may head off a possible claim that defense counsel failed to communicate a formal plea offer.").  Additionally, the language that Nissenbaum cites is merely dicta, and thus it does not qualify as "clearly established Federal law" under Section 2254.  *Yarborough v. Alvarado*, 541 U.S. 652,

18

660–61 (2004).

Nissenbaum contends that the appellate court contradicted or unreasonably applied federal law by relying on Illinois state law to determine if Bagby's proposal amounted to a formal plea offer. Pet'r's Mem. at 31. But the Supreme Court recognized in *Frye* that state trial courts have the power to develop requirements for formal plea offers. *Frye*, 566 U.S. at 146 (citing state court plea offer policy). And post-*Frye*, federal courts have continued to rely on state law to evaluate whether a proposed plea agreement constitutes a formal offer. *See, e.g.*, *Calligan v. Warden*, No. 3:19-CV-825 DRL-MGG, 2021 WL 3887222, at *2 (N.D. Ind. Aug. 31, 2021) (concluding that prosecutor's plea proposal did not amount to a formal offer under Indiana law).

According to the respondent, the absence of a formal plea offer is dispositive because without that, Nissenbaum cannot establish prejudice. The Court disagrees. The Seventh Circuit has recognized that in the absence of a formal plea agreement, a petitioner can prevail on an ineffective assistance of counsel claim using the traditional principles for demonstrating prejudice in the plea bargaining context that the Supreme Court established in *Lafler* and *Frye*.[3] *Delatorre v. United States*, 847 F.3d 837, 846 (7th Cir. 2017); *see also Fisher v. United States*, No. 1:21-CV-00707-JMS-DLP, 2022 WL 13909681, at *3 (S.D. Ind. Oct. 24, 2022) ("[Petitioner] could establish ineffective

---

[3] The respondent contends that the Seventh Circuit held in *Delatorre* that the test for demonstrating prejudice in the plea bargain context established in *Frye* and *Lafler* does not apply in cases where the defendant was never offered a formal plea agreement. Resp't's Answer at 25. But in *Delatorre*, the petitioner's ineffective assistance of counsel claim "center[ed] on his attorney's inability to secure a plea agreement for him." *Delatorre*, 847 F.3d at 846. By contrast, Nissenbaum argues not that Truesdale failed to obtain a favorable plea offer, but that he would have accepted Bagby's favorable plea proposal in the absence of Truesdale's constitutionally deficient performance with respect to that proposal. *Frye* and *Lafler* therefore apply to Nissenbaum's claims.

assistance by demonstrating that [counsel's] ineffective assistance cost him an opportunity to plead guilty under favorable circumstances."). Nissenbaum's prejudice argument therefore does not require a formal plea offer.

### b. Acceptance of plea proposal

In support of his prejudice argument, Nissenbaum directs this Court's attention to his testimony that he would have accepted a plea deal if he had received adequate assistance of counsel, as well as what he considers "objectively verifiable reasons that he was prejudiced." Pet'r's Mem. at 22. As noted above, whether a defendant would have accepted a plea offer is a factual, not legal, question. And in a federal habeas corpus proceeding, a state court's factual findings receive a presumption of correctness that makes them binding in federal court unless the petitioner rebuts the presumption by clear and convincing evidence. *Gilbreath*, 21 F.4th at 968. But although Nissenbaum's observations are relevant to the prejudice analysis, they do not amount to clear and convincing evidence that the appellate court erred in determining that he had not demonstrated that he would have been willing to accept Bagby's plea proposal absent Truesdale's allegedly deficient performance. Furthermore, Nissenbaum has not shown that the appellate court's determination was unreasonable in light of the evidence presented.

Nissenbaum first directs this Court's attention to the twelve-year disparity between the sentence he was subject to (twelve years) and the plea offer (probation), as well as the six-year disparity between what he says he believed was the mandatory minimum sentence upon conviction (six years) and the actual mandatory minimum sentence (twelve years). Pet'r's Mem. at 24. Nissenbaum cites *Brinson v. Nicholson*,

20

No. 18 CV 05007, 2020 WL 4015325, at *7 (N.D. Ill. July 16, 2020), in support of his argument that these disparities "gives rise to the reasonable inference that he would have accepted the plea." Pet'r's Mem. at 24. But *Brinson* is distinguishable.

In *Brinson*, the court found that the state court had unreasonably applied *Strickland* by comparing the sentence that the petitioner "should have known" he was facing with the sentence that he received. *Brinson*, 2020 WL 4015325, at *7. Here, the Illinois Appellate Court made no such error. The appellate court acknowledged the disparity that Nissenbaum identifies but found that, given his awareness that rejecting a plea offer meant that he risked serving at least six years in prison, his claimed ignorance of the twelve-year minimum sentence he faced was not sufficient to demonstrate a reasonable probability that he would have accepted Bagby's proposal had he known of the mandatory consecutive sentencing. *See Nissenbaum*, 2021 WL 1085228, ¶¶ 54-55. This finding is supported by the evidence in the record. When first presented with Bagby's proposal, Nissenbaum was aware that it involved an indeterminate term of probation and no prison time. Yet he did not accept the proposal; instead, he told Truesdale that he would like to discuss the matter with his family. *Id.* ¶ 26. Nissenbaum also told Truesdale that there were non-sentencing-related conditions under which he would not be amenable to a plea deal at all, including any offer that involved registering as a sex offender. *Id.* ¶ 23. Given the evidence that the length of the potential sentence was not Nissenbaum's only concern in the plea negotiation process, the appellate court's determination that he would not have accepted the plea proposal even if he had been properly advised of the sentencing consequences was not unreasonable.

21

Nissenbaum also contends that the appellate court unreasonably disregarded evidence that he "actively sought out a plea deal from the State." Pet'r's Mem. at 29. But to establish that he was prejudiced under *Strickland*, Nissenbaum cannot simply show that he was generally willing to accept *a* plea offer; he must demonstrate that there is a reasonable probability that he would have accepted the deal that was actually offered. *See Quintana v. Chandler*, 723 F.3d 849, 857 (7th Cir. 2013). On this point, the appellate court found that Nissenbaum "[did] not demonstrate that he would have accepted an offer to plead guilty to the felony charge which was being proposed as a possibility by the State at that time." *Nissenbaum*, 2021 WL 1085228, ¶ 57.

Nissenbaum asserts that the appellate court erred because his "expressed desire to reject pleading to a felony is not dispositive." Pet'r's Mem. at 28. But the appellate court did not treat Nissenbaum's reluctance to plead guilty to a felony as "dispositive." Rather, Nissenbaum's stated desire to avoid having a felony on his record was one of several items of evidence that the court used in its reasonable probability analysis, including his failure to accept an earlier plea offer before it was revoked. *Nissenbaum*, 2021 WL 1085228, ¶ 57. Nissenbaum also argues that the appellate court's consideration of his documented aversion to pleading guilty to a felony unreasonably applied *Lafler* and *Frye* because it did consider whether there was a reasonable probability that he would have accepted Bagby's proposal if he had received effective advice.[4] But neither *Lafler* nor *Frye* stand for the proposition that a court may not

---

[4] Nissenbaum cites multiple federal district and appellate court cases in support of his argument. But because these cases are not Supreme Court precedent, they do not constitute "clearly established Federal law" under Section 2254(d). *Glebe v. Frost*, 574 U.S. 21, 24 (2014). The state appellate court's apparent departure from the reasoning

consider a defendant's actions at the time that a plea deal is offered in determining if he suffered prejudice. In fact, the Supreme Court has instructed judges to "look to contemporaneous evidence to substantiate a defendant's expressed preferences" for plea offers. *Lee v. United States*, 582 U.S. 357, 369 (2017).

Nissenbaum repeatedly expressed to Truesdale, both in person and via email, his desire not to have a felony on his record . *Nissenbaum*, 2021 WL 1085228, ¶¶ 25-26. The appellate court reasonably relied upon this contemporaneous evidence in determining that there was no reasonable probability that Nissenbaum would have accepted a plea proposal that required pleading guilty to a felony charge. *Nissenbaum*, 2021 WL 1085228, ¶¶ 57, 59; *see Zavala v. Gomez*, No. 20 C 2787, 2021 WL 463273, at *6 (N.D. Ill. Feb. 9, 2021) (concluding state court properly considered petitioner's stated desire to proceed to trial in *Strickland* prejudice analysis). Given the contemporaneous evidence in the record that Nissenbaum was not interested in any offer that included a felony plea, his later testimony that he would have pled guilty to a felony if he knew he would be subject to mandatory consecutive sentencing could appropriately be considered by the state appellate court as "precisely the type of post hoc assertion[] on which courts may not, and certainly need not, solely rely." *Crowell v. Sevier*, 77 F.4th 539, 545 (7th Cir. 2023) (citing *Lee*, 582 U.S. at 369).

Nissenbaum also argues that he was prejudiced due to Truesdale's "failure to provide a commonsense recommendation on the merits of the State's offer." Pet'r's Mem. at 25. He does not explain, however, how the appellate court's determination on

---

employed in those cases is not a basis to find that the court unreasonably applied federal law.

this issue is unreasonable. Instead he offers a conclusory and unsupported statement that a "reasonable probability existed" that he would have accepted Bagby's plea proposal "had Truesdale given her reasoned judgement on whether to take the plea in light of overwhelming evidence of Nissenbaum's guilt and the mandatory minimum." *Id.* But the alleged weakness of Nissenbaum's consent defense and the favorable terms of the plea proposal are not sufficient to establish a reasonable probability that he would have accepted a plea deal but for Truesdale's alleged deficiencies. *Quintana*, 723 F.3d at 856 ("[E]ven in the face of a favorable plea offer and unfavorable facts, some defendants might still advance to trial, swearing they are innocent and thinking they can succeed against the state."). And given the evidence in the record regarding Nissenbaum's plea preferences, including his expressed unwillingness to plead guilty to a felony, a reasonable basis existed for the appellate court's determination that he was not prejudiced by any alleged deficiencies in Truesdale's performance.

In summary, Nissenbaum has not shown that the Illinois appellate court's determination that he failed to meet his burden of showing that he would have accepted Bagby's alleged plea proposal involved an unreasonable application of law or was based on an unreasonable determination of the facts.

### c. Withdrawal of offer

To establish prejudice under *Strickland*, Nissenbaum must demonstrate that there is a reasonable probability that "the plea would have been entered without the prosecution canceling it or the state court refusing to accept it." *Frye*, 566 U.S. at 147. The appellate court assumed that the trial judge would have accepted a plea agreement, *Nissenbaum*, 2021 WL 1085228, ¶ 60, but determined that Nissenbaum

had not shown that the State would not have canceled the offer. *Id.* ¶ 45. Nissenbaum contends that the appellate court "ignored" ASA Bagby's testimony that "had Nissenbaum accepted, she would have submitted the State's plea offer to the judge for approval at the April 11, 2017 court hearing" prior to her conversation with D.K. Pet'r's Mem. at 35. Nissenbaum misstates Bagby's testimony. Bagby stated that "if Truesdale had come to [her] and said that . . . she would like to talk to [her] about terms and conditions . . . I would have negotiated a plea with Mr. Nissenbaum on that day." State Ct. R., Ex. J. at R1360. Bagby's testimony indicates that the plea proposal could have been formalized and submitted to the court at the April 11, 2017 hearing *only if* Truesdale had first reached out to Bagby beforehand to discuss the terms and conditions of the offer *and* the parties had reached an agreement on those terms.

"The Seventh Circuit requires a [habeas corpus] petitioner to present objective evidence that he was prejudiced." *Lechuga v. United States*, 15 F. Supp. 3d 788, 795 (N.D. Ill. 2014) (citing *Hutchings v. United States*, 618 F.3d 693, 697 (7th Cir. 2010)); *Gacho v. Brannon-Dortch*, No. 21 C 5612, 2022 WL 15456584, at *4 (N.D. Ill. Oct. 27, 2022) ("[S]ubjective, self-serving after-the-fact assertions do not demonstrate prejudice."). Here, Nissenbaum offers no evidence, other than his own assertions, that the terms and conditions of the plea deal would have been finalized ahead of the April 11 court hearing. And as the appellate court noted, Nissenbaum's assertion that he would have accepted any terms that potentially could have been included in the final agreement rests upon "layers of conjecture." *Nissenbaum*, 2021 WL 1085228, ¶ 46. Bagby's plea proposal lacked several conditions that would have had to be agreed upon prior to formalizing a plea deal, including the length and conditions of the term of

25

probation and, potentially, the factual basis for the plea.  For these reasons, the state

appellate court's determination that there was no reasonable probability that a final plea

agreement would not have been withdrawn on April 11, 2017, was not "so lacking in

justification" that fairminded jurists would be compelled to reach a contrary conclusion.

Nissenbaum also argues that he was prejudiced because Truesdale "misled

[him] into believing that the State would keep its offer open until trial," and that if he had

known the plea proposal could be revoked at any time, there is a "reasonable probability

that he would have acted swiftly" to accept it.  Pet'r's Mem. at 37.  But Nissenbaum

again provides no evidence other than his own assertions to support this argument.

Although Nissenbaum initially told Truesdale that he would make a decision regarding

the plea proposal prior to the April 11, 2021 hearing, he testified that when he arrived in

court that day, he had not made a decision about whether to accept or reject the offer.

State Ct. R., Ex. J at R1630-32.  Additionally, the trial court found Nissenbaum's

testimony that he was unaware that a plea offer could be revoked to lack credibility

given that the prosecution had already withdrawn an earlier plea offer in his case.  State

Ct. R., Ex. M at R1764.  Nissenbaum argues that the trial court's credibility finding is

irrelevant because the question is "whether [he] knew that the State could renege on its

promise" to keep the offer open until trial, not whether he knew the general conditions

under which the prosecution could withdraw a plea offer.  Pet'r's Mem. at 37.  But

because the appellate court properly relied on the trial court's factual findings regarding

Nissenbaum's awareness that the plea offer could be revoked, it was not unreasonable

for the court to conclude that Nissenbaum had failed to demonstrate that he would have

negotiated, finalized, and entered a plea deal prior to his April 11, 2017 hearing if he

were better informed of the State's plea offer withdrawal possibilities.

In sum, the Court concludes that the state appellate court's determination that Nissenbaum was not prejudiced by his counsel's performance was not an unreasonable application of clearly established federal law and was not based on an unreasonable determination of the facts. The Court therefore denies Nissenbaum's section 2254 petition.

## Conclusion

For the foregoing reasons, the Court directs the Clerk to enter judgment stating: Nathan Nissenbaum's petition for a writ of habeas corpus is denied. The Court issues a certificate of appealability on the single claim presented in the petition.

MATTHEW F. KENNELLY
United States District Judge

Date: June 13, 2024